**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Marc E. Hirschfield
Richard J. Bernard
Geraldine E. Ponto
Marc Skapof
*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant Plan. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>THE LDP CORP. PROFIT SHARING PLAN AND TRUST; LEONARD D. PEARLMAN, in his capacity as Trustee for The LDP Corp. Profit Sharing Plan and Trust; and EMANUEL R. PEARLMAN, in his capacity as Trustee for The LDP Corp. Profit Sharing Plan and Trust,<br><br>Defendants. | Adv. Pro. No. 10-__________ (BRL) |

**COMPLAINT**

Irving H. Picard (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"),[1] and the substantively consolidated estate of Bernard L. Madoff individually ("Madoff"), by and through his undersigned counsel, for his complaint (the "Complaint"), and states as follows:

**NATURE OF PROCEEDING**

1. This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff. Over the course of the scheme, there were more than 8,000 client accounts at BLMIS. In early December 2008, BLMIS generated client account statements for its nearly 4,900 open client accounts. When added together, these statements purport that clients of BLMIS had approximately $65 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts, and was sentenced on June 29, 2009 to 150 years in prison. The within defendants, The LDP Corp. Profit Sharing Plan and Trust ("Defendant Plan") and Leonard D. Pearlman and Emanuel R. Pearlman, in their capacities as trustees of Defendant Plan (together, the "Trustee Defendants") received avoidable transfers from BLMIS.

2. Defendant Plan was a beneficiary of this Ponzi scheme. Since December 11, 2002, Defendant Plan received the amount of $850,000 from BLMIS. The Trustee's investigation has revealed that $606,000 of this amount represented fictitious profits from the Ponzi scheme. Accordingly, Defendant Plan has received $606,000 of other people's money. This action is brought to recover the fictitious profit amount so that this customer property can be equitably distributed among all of the victims of BLMIS.

[1] For convenience, future reference to SIPA will not include "15 U.S.C."

3. This adversary proceeding is brought pursuant to sections 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, sections 105(a), 544, 548(a), 550(a) and 551 of title 11 of the United States Code (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law § 270 *et seq*. (McKinney 2001) ("DCL")) and other applicable law, for avoidance of fraudulent conveyances in connection with certain transfers of property by BLMIS to or for the benefit of Defendant Plan. The Trustee seeks to set aside such transfers and preserve and recover the property for the benefit of BLMIS' defrauded customers.

**JURISDICTION AND VENUE**

4. This is an adversary proceeding commenced before the same Court before whom the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A) and, (b)(4).

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

6. Venue in this district is proper under 28 U.S.C. § 1409.

**DEFENDANT PLANS**

7. The LDP Corp. Profit Sharing Plan is an employee pension benefit plan formed in 1986 and funded through the settlement of a putative trust subject to relevant New York law. Defendant Plan's principal place of business is, or was, located at 112 West 56th Street, Suite 205, New York, New York, 10019. Defendant Plan holds, or as a result of actions taken by the Trustee Defendants, holds BLMIS Account No. 1ZA795 in the name "The LDP Corp. Profit Sharing Plan & Trust c/o Leonard D. Pearlman," with the account address reported as 112 West

56th Street, New York, New York, 10019. At least through November 18, 2009, Trustee Defendants have held out Defendant Plan as continuing in effect, with the Trustee Defendants as the co-trustees of trust used to fund plan benefits.

8. Upon information and belief, Trustee Defendant Leonard D. Pearlman currently serves as a trustee of Defendant Plan, and is named in this Complaint solely in his capacity as trustee, and not personally. Upon information and belief, Trustee Defendant Leonard D. Pearlman resides in New York, New York.

9. Upon information and belief, Trustee Defendant Emanuel R. Pearlman currently serves as a trustee of Defendant Plan, and is named in this Complaint solely in his capacity as trustee, and not personally. Upon information and belief, Trustee Defendant Emanuel R. Pearlman resides in New York, New York.

## BACKGROUND, THE TRUSTEE AND STANDING

10. On December 11, 2008 (the "Filing Date"),[2] Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court which commenced the District Court Proceeding against Madoff and BLMIS. The District Court Proceeding remains pending in the District Court. The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

[2] Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." 15 U.S.C. § 78*lll*(7)(B). Thus, even though the application for a protective decree was filed on December 15, 2008, the Filing Date in this action is December 11, 2008.

11. On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. (the "Receiver") as receiver for the assets of BLMIS.

12. On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

13. Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

a. appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

b. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

c. removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

14. By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

15. At a Plea Hearing on March 12, 2009 in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an eleven-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York.

At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." Plea Allocution of Bernard L. Madoff at 23, *United States v. Madoff,* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Additionally, Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." *Id.* Madoff was sentenced on June 29, 2009 to 150 years in prison.

16. On August 11, 2009, a former BLMIS employee, Frank DiPascali, pled guilty to participating in and conspiring to perpetuate the Ponzi scheme. At a Plea Hearing on August 11, 2009 in the case entitled *United States v. DiPascali,* Case No. 09-CR-764 (RJS), DiPascali pled guilty to a ten-count criminal information. Among other things, DiPascali admitted that the fictitious scheme had begun at BLMIS since at least the 1980s. Plea Allocution of Frank DiPascali at 46, *United States v. DiPascali,* No. 09-CR-764 (RJS) (S.D.N.Y. Aug. 11, 2009) (Docket No. 11).

17. As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway. However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and/or payouts of fictitious profits to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1).

18. Pursuant to section 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to SIPA section 78fff(b). Chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

19. Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

20. The Trustee has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

a. Defendant Plan received "Customer Property" as defined in 15 U.S.C. §78*lll*(4);

b. BLMIS incurred losses as a result of the claims set forth herein;

c. BLMIS' customers were injured as a result of the conduct detailed herein;

d. SIPC has not reimbursed, and statutorily cannot fully reimburse, all customers for all of their losses;

e. the Trustee will not be able to fully satisfy all claims;

f. the Trustee, as bailee of customer property, can sue on behalf of the customer bailors;

g. The Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers, collectively, "Accountholders"). As of the date hereof, the Trustee has received multiple express unconditional assignments of the applicable Accountholders' causes of action, which actions

could have been asserted against Defendant Plan. As assignee, the Trustee stands in the shoes of persons who have suffered injury in fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages. The Trustee brings this action on behalf of, among others, those defrauded customers of BLMIS who invested more money in BLMIS than they withdrew; and

h. SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding. SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds.

## THE FRAUDULENT PONZI SCHEME

21. Founded in 1959, BLMIS began operations as a sole proprietorship of Madoff and later, effective January 2001, formed as a New York limited liability company wholly owned by Madoff. Since in or about 1986, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, proprietor, chairman, and chief executive officer, ran BLMIS together with several family members and a number of additional employees. BLMIS was registered with the SEC as a securities broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b). By that registration, BLMIS is a member of SIPC. BLMIS had three business units: investment advisory (the "IA Business"), market making and proprietary trading.

22. For certain accounts in the IA Business, BLMIS purported to participate in a capital appreciation/depreciation strategy, depending on whether the customer sought to generate gains or losses. For example, the strategy was executed by either purporting to purchase small groups of securities near lows and then purporting to sell those same securities at highs, or by

purporting to short-sell securities near highs and then purporting to repurchase those securities near lows.

23. For other accounts, Madoff described the IA Business' strategy as a "split-strike conversion" strategy. Madoff promised these clients that their funds would be invested in a basket of common stocks within the S&P 100 Index, which is a collection of the 100 largest U.S. publicly traded companies. The basket of stocks would be intended to mimic the movement of the S&P 100 Index. Madoff asserted that he would carefully time purchases and sales to maximize value, but this meant that the clients' funds would intermittently be out of the market, at which times they would purportedly be invested in U.S. issued securities and money market funds. The second part of the split-strike conversion strategy was the hedge of such purchases with option contracts. Madoff purported to purchase and sell S&P 100 Index option contracts that closely corresponded with the stocks in the basket, thereby controlling the downside risk of price changes in the basket of stocks.

24. Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities that were held in – or had been traded through – their accounts, as well as the growth of and profit from those accounts over time, the trades reported on these statements were a complete fabrication. The security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious. At his Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts. *See* Plea Allocution of Bernard L. Madoff at 3, *United States v. Madoff,* No. 09-CR-213 (DC) (S.D.N.Y. March 12, 2009) (Docket No. 50). Indeed, based on the Trustee's investigation to date and with the exception of isolated individual trades for certain parties other than Defendant Plan, there is no record of BLMIS having cleared

any purchase or sale of securities on behalf of the IA Business at the Depository Trust & Clearing Corporation, the clearing house for such transactions.

25. Prior to his arrest, Madoff assured clients and regulators that he conducted all trades on the over-the-counter market after hours. To bolster that lie, Madoff periodically wired tens of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a London based entity substantially owned by Madoff and his family. There are no records that MSIL ever used the wired funds to purchase securities for the accounts of the IA Business clients.

26. Additionally, based on the Trustee's investigation to date, there is no evidence that BLMIS ever purchased or sold any of the options that Madoff claimed on customer statements to have purchased and sold.

27. For all periods relevant hereto, the IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay or defraud other current and prospective customers of BLMIS. The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to – or payments on behalf of – other investors. The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his associates and others, including Defendant Plan, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

28. The payments to investors constituted an intentional misrepresentation of fact regarding the underlying accounts and were an integral and essential part of the fraud. The payments were necessary to validate the false account statements, and were made to avoid

detection of the fraud, to retain existing investors and to lure other investors into the Ponzi scheme.

29. During the scheme, certain investors requested and received distributions of the so-called "profits" listed for their accounts which were nothing more than fictitious profits. Other investors, from time to time, redeemed or closed their accounts, or removed portions of purportedly available funds, and were paid consistently with the statements they had been receiving. Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

30. When payments were made to or on behalf of these investors, including Defendant Plan, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains. In reality, BLMIS had not invested the investors' principal as reflected in customer statements. In an attempt to conceal the ongoing fraud and thereby hinder, delay or defraud other current and prospective investors, BLMIS paid to or on behalf of certain investors the inflated amounts reflected in the falsified financial statements, including principal and/or fictitious profits.

31. BLMIS used the funds deposited from new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers. Due to the siphoning and diversion of new investments to fund redemptions requested by other investors, BLMIS did not have the funds to pay investors on account of their new investments. BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors or their designees.

32. In an effort to hinder, delay or defraud authorities from detecting the fraud, BLMIS did not register as an Investment Advisor until September 2006.

33. In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration. The application represented, *inter alia*, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had approximately 4,900 active client accounts with a purported value of approximately $65 billion under management.

34. Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York. Of the two accountants at the firm, one was semi-retired and living in Florida for many years prior to the Filing Date.

35. At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS. At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

**THE TRANSFERS**

36. According to BLMIS' records, Account No. 1ZA795 was maintained by Trustee Defendants for and on behalf of Defendant Plan with BLMIS, as set forth on Exhibit A (the "Account"). Upon information and belief, for the Account, a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options (collectively, the "Account Agreements") were executed and delivered to BLMIS at BLMIS' headquarters at 885 Third Avenue, New York, New York.

37. The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Account was held in New York, New York, and funds were sent to BLMIS and/or to BLMIS' account at JPMorgan Chase & Co., Account #xxxxxxxxxxx1703 (the "BLMIS Bank Account") in New

York, New York for application to the Account and the purported conducting of trading activities. Between the date the account was opened and the Filing Date, deposits for application to the Account were made to BLMIS through checks and/or wire transfers into the BLMIS Bank Account or received an inter-account transfer from another BLMIS account.

38. During the six years prior to the Filing Date, BLMIS made transfers (collectively, the "Transfers") to Trustee Defendants, for and an behalf of Defendant Plan, totaling $606,000 in fictitious profits from the Ponzi scheme. The Transfers received by Trustee Defendants, for and an behalf of Defendant Plan, constitute non-existent profits supposedly earned in the Account, but, in reality, they were other people's money. The Transfers were made to or for the benefit of Defendant Plan and are set forth in Columns 10 and 11 on Exhibit B annexed hereto.

39. The Transfers that are avoidable and recoverable under sections 544(b), 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and DCL sections 273 – 279 (McKinney 2001) total $606,000 and are referred to hereafter as the "Six Year Transfers." See Exhibit B, Column 11. The Transfers that are avoidable and recoverable under sections 548(a), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly SIPA section 78fff-2(c)(3), total $449,500 and are referred to hereafter as the "Two Year Transfers." See Exhibit B, Column 10.

40. The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Transfers and any additional transfers and (ii) seek recovery of such additional transfers.

41. To the extent that any of the avoidance and/or recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

## CUSTOMER CLAIMS

42. On or about March 4, 2009, Trustee Defendants, acting for the Defendant Plan, filed a customer claim with the Trustee which the Trustee has designated as Claim #006424 (the "Customer Claim").

43. On or about October 19, 2009, the Trustee issued a Notice of Trustee's Determination of Claim (the "Determination") with respect to the Customer Claim. A copy of the Determination is attached hereto as Exhibit C.

44. On November 18, 2009, Trustee Defendants, acting for the Defendant Plan, filed an objection to the Determination with the Court (the "Claims Objection").

45. On December 23, 2008, this Court entered an Order on Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination and Adjudication of Claims, and Providing Other Relief ("Claims Procedures Order"; Docket No. 12). The Claims Procedures Order includes a process for determination and allowance of claims under which the Trustee has been operating. The Trustee intends to resolve the Customer Claim and Claims Objection to the Trustee's determination of such claim through a separate hearing as contemplated by the Claims Procedures Order.

## COUNT ONE
## FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(A), 550(a) AND 551

46. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

47. Each of the Two Year Transfers was made on or within two years before the Filing Date.

48. Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

49. Each of the Two Year Transfers was made by BLMIS with the actual intent to hinder, delay, or defraud some or all of BLMIS' then existing and/or future creditors.

50. Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Defendant Plan pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

51. As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (i) against Defendant Plan (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS; and (ii) against Trustee Defendants directing Trustee Defendants to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Two Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS.

**COUNT TWO**
**FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(B), 550(a) AND 551**

52. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

53. Each of the Two Year Transfers was made on or within two years before the Filing Date.

54. Each of the Two Year Transfers constituted a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to section 78fff-2(c)(3) of SIPA.

55. BLMIS received less than reasonably equivalent value in exchange for each of the Two Year Transfers.

56. At the time of each of the Two Year Transfers, BLMIS was insolvent, or became insolvent as a result of the Two Year Transfers.

57. At the time of each of the Two Year Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in a business or transaction, for which any property remaining with BLMIS was an unreasonably small capital.

58. At the time BLMIS made each of the Two Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

59. Each of the Two Year Transfers constitutes a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Defendant Plan pursuant to section 550(a) of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA.

60. As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (i) against Defendant Plan (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS; and (ii) against Trustee Defendants directing Trustee Defendants to surrender and transfer or to otherwise facilitate the

surrender and transfer of such avoided Two Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS.

## COUNT THREE
## FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551

61. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

62. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

63. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

64. Each of the Six Year Transfers was made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made each of the Six Year Transfers to or for the benefit of Defendant Plan in furtherance of a fraudulent investment scheme.

65. As a result of the foregoing, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (i) against Defendant Plan (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS; and (ii) against Trustee Defendants directing Trustee Defendants to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Six Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS.

## COUNT FOUR
## FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW §§ 273, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a) AND 551

66. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

67. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

68. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

69. BLMIS did not receive fair consideration for any of the Six Year Transfers.

70. BLMIS was insolvent, or became insolvent as a result of the Six Year Transfers.

71. As a result of the foregoing, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (i) against Defendant Plan (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS; and (ii) against Trustee Defendants directing Trustee Defendants to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Six Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS.

## COUNT FIVE
## FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551

72. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

73. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

74. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

75. BLMIS did not receive fair consideration for any of the Six Year Transfers.

76. At the time BLMIS made each of the Six Year Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six Year Transfers was an unreasonably small capital.

77. As a result of the foregoing, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (i) against Defendant Plan (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS; and (ii) against Trustee Defendants directing Trustee Defendants to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Six Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS.

## COUNT SIX
## FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278 AND/OR 279, AND 11 U.S.C. §§ 544(b), 550(a), AND 551

78. To the extent applicable, the Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

79. At all times relevant to the Six Year Transfers, there have been and are one or more creditors who have held and still hold matured or unmatured unsecured claims against

BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e) of the Bankruptcy Code.

80. Each of the Six Year Transfers constituted a conveyance by BLMIS as defined under DCL section 270.

81. BLMIS did not receive fair consideration for any of the Six Year Transfers.

82. At the time BLMIS made each of the Six Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

83. As a result of the foregoing, pursuant to DCL sections 275, 278 and/or 279 and sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA, the Trustee is entitled to a judgment: (i) against Defendant Plan (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS; and (ii) against Trustee Defendants directing Trustee Defendants to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Six Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Defendant Plan and Trustee Defendants as follows:

i. On the First Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, (c) recovering the Two Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS, and (d) directing Trustee Defendants to surrender and transfer or to otherwise facilitate the

surrender and transfer of such avoided Two Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS;

ii. On the Second Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, (c) recovering the Two Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS, and (d) directing Trustee Defendants to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Two Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS;

iii. On the Third Claim for Relief, pursuant to DCL sections 276, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, (c) recovering the Six Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS, and (d) directing Trustee Defendants to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Six Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS;

iv. On the Fourth Claim for Relief, pursuant to DCL sections 273, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, (c) recovering the Six Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS, and (d) directing Trustee Defendants to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Six Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS;

v. On the Fifth Claim for Relief, pursuant to DCL sections 274, 278 and/or 279, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing the Six Year Transfers be set aside, (c) recovering the Six Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS, and (d) directing Trustee Defendants to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Six Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS;

vi. On the Sixth Claim for Relief, pursuant to DCL sections 275, 278 and/or 279, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and section 78fff-2(c)(3) of SIPA: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, (c) recovering the Six Year Transfers, or the value thereof, from Defendant Plan for the benefit of the estate of BLMIS, and (d) directing Trustee Defendants to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Six Year Transfers from Defendant Plan to Trustee for the benefit of the estate of BLMIS;

vii. On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001 and 5004 awarding the Trustee prejudgment interest from the date on which the Transfers were received;

viii. On all Claims for Relief, establishment of a constructive trust over the proceeds of the Transfers in favor of the Trustee for the benefit of BLMIS' estate;

ix. On all Claims for Relief, assignment of Defendant Plan's income tax refunds from the United States, state and local governments paid on fictitious profits during the course of the scheme;

x. On all Claims for Relief, awarding the Trustee all applicable interest, costs, and disbursements of this action; and

xi. On all Claims for Relief, granting Plaintiff such other, further, and different relief as the Court deems just, proper and equitable.

Date: November 12, 2010
New York, New York

Of Counsel:
**BAKER & HOSTETLER LLP**
2300 SunTrust Center
200 South Orange Avenue
Orlando, Florida 32801
Telephone: 407-649-4000
Facsimile: 407-841-0168
Matthew P. Julian
Email: mjulian@bakerlaw.com
Christa C. Turner
Email: cturner@bakerlaw.com

By: /s/ Marc E. Hirschfield
/s/ Richard J. Bernard
/s/ Geraldine E. Ponto
/s/ Marc Skapof
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Richard J. Bernard
Email: rbernard@bakerlaw.com
Geraldine E. Ponto
Email: gponto@bakerlaw.com
Marc Skapof
Email: mskapof@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

**Exhibit A**

| BLMIS Account Name | BLMIS Account Number |
|---|---|
| THE LDP CORP PROFIT SHARING PLAN & TRUST C/O LEONARD D PEARLMAN | 1ZA795 |

Exhibit B

BLMIS ACCOUNT NO. 1ZA795 - THE LDP CORP PROFIT SHARING PLAN & TRUST C/O LEONARD D PEARLMAN

| Column 1<br>Date | Column 2<br>Transaction Description | Column 3<br>Transaction Amount Reported in Customer Statement | Column 4<br>Cash Deposits | Column 5<br>Cash Withdrawals | Column 6<br>Transfers of Principal In | Column 7<br>Transfers of Principal Out | Column 8<br>Balance of Principal | Column 9<br>90-Day Preferential Transfers | Column 10<br>2-Year Fraudulent Transfers | Column 11<br>6-Year Fraudulent Conveyances |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/24/1992 | CHECK | 150,000 | 150,000 | - | - | - | 150,000 | - | - | - |
| 2/1/1994 | CHECK | 174,000 | 174,000 | - | - | - | 324,000 | - | - | - |
| 9/1/1994 | CHECK | 100,000 | 100,000 | - | - | - | 424,000 | - | - | - |
| 11/23/1994 | CHECK | 27,000 | 27,000 | - | - | - | 451,000 | - | - | - |
| 10/2/1995 | CHECK | (50,000) | - | (50,000) | - | - | 401,000 | - | - | - |
| 2/9/1996 | CHECK | 50,000 | 50,000 | - | - | - | 451,000 | - | - | - |
| 7/12/1996 | CHECK | (18,000) | - | (18,000) | - | - | 433,000 | - | - | - |
| 7/23/1997 | CHECK | (21,000) | - | (21,000) | - | - | 412,000 | - | - | - |
| 7/22/1998 | CHECK | (47,000) | - | (47,000) | - | - | 365,000 | - | - | - |
| 6/9/1999 | CHECK | (31,000) | - | (31,000) | - | - | 334,000 | - | - | - |
| 11/29/2002 | CHECK | (90,000) | - | (90,000) | - | - | 244,000 | - | - | - |
| 12/23/2003 | CHECK | (55,000) | - | (55,000) | - | - | 189,000 | - | - | - |
| 8/23/2004 | CHECK | (109,000) | - | (109,000) | - | - | 80,000 | - | - | - |
| 8/24/2004 | CHECK | (109,000) | - | (109,000) | - | - | (29,000) | - | - | - |
| 8/31/2004 | CANCEL CHECK | 109,000 | - | 109,000 | - | - | 80,000 | - | - | - |
| 1/7/2005 | CHECK | (110,000) | - | (110,000) | - | - | (30,000) | - | - | (30,000) |
| 1/10/2006 | CHECK | (126,500) | - | (126,500) | - | - | (156,500) | - | - | (126,500) |
| 2/1/2007 | CHECK | (100,000) | - | (100,000) | - | - | (256,500) | - | (100,000) | (100,000) |
| 2/2/2007 | CHECK | (100,000) | - | (100,000) | - | - | (356,500) | - | - | - |
| 2/6/2007 | STOP PAYMENT | 100,000 | - | 100,000 | - | - | (256,500) | - | - | - |
| 2/8/2007 | CHECK | (50,000) | - | (50,000) | - | - | (306,500) | - | (50,000) | (50,000) |
| 7/24/2007 | CHECK | (38,500) | - | (38,500) | - | - | (345,000) | - | (38,500) | (38,500) |
| 10/29/2007 | CHECK | (16,000) | - | (16,000) | - | - | (361,000) | - | (16,000) | (16,000) |
| 1/31/2008 | CHECK | (35,000) | - | (35,000) | - | - | (396,000) | - | (35,000) | (35,000) |
| 4/30/2008 | CHECK | (75,000) | - | (75,000) | - | - | (471,000) | - | (75,000) | (75,000) |
| 5/19/2008 | CHECK | (90,000) | - | (90,000) | - | - | (561,000) | - | (90,000) | (90,000) |
| 10/28/2008 | CHECK | (45,000) | - | (45,000) | - | - | (606,000) | - | (45,000) | (45,000) |
| | | **Total:** | **$ 501,000** | **$ (1,107,000)** | **$ -** | **$ -** | **$ (606,000)** | **$ -** | **$ (449,500)** | **$ (606,000)** |



MADC1041_00000002

**BERNARD L. MADOFF INVESTMENT SECURITIES LLC**

In Liquidation

**DECEMBER 11, 2008**[1]

**NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM**

October 19, 2009

The LDP Corp. Profit Sharing Plan & Trust
c/o Leonard D. Pearlman
REDACTED
New York, NY 10019

Dear LDP Corp. Profit Sharing Plan & Trust:

**PLEASE READ THIS NOTICE CAREFULLY.**

The liquidation of the business of BERNARD L. MADOFF INVESTMENT SECURITIES LLC ("BLMIS") is being conducted by Irving H. Picard, Trustee under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ("SIPA"), pursuant to an order entered on December 15, 2008 by the United States District Court for the Southern District of New York.

The Trustee has made the following determination regarding your claim on BLMIS Account No. 1ZA795 designated as Claim Number 006424:

Your claim for a credit balance of $1,787,986.77 and for securities is **DENIED**. No securities were ever purchased for your account.

Further, based on the Trustee's analysis, the amount of money you withdrew from your account at BLMIS (total of $1,107,000.00), as more fully set forth in Table 1 annexed hereto and made a part hereof, is greater than the amount that was deposited with BLMIS for the purchase of securities (total

1 Section 78*lll*(7)(B) of SIPA states that the filing date is "the date on which an application for a protective decree is filed under 78eee(a)(3)," except where the debtor is the subject of a proceeding pending before a United States court "in which a receiver, trustee, or liquidator for such debtor has been appointed and such proceeding was commenced before the date on which such application was filed, the term 'filing date' means the date on which such proceeding was commenced." Section 78*lll*(7)(B). Thus, even though the Application for a protective decree was filed on December 15, 2008, the Filing Date in this action is on December 11, 2008.

of $501,000.00). As noted, no securities were ever purchased by BLMIS for your account. Any and all profits reported to you by BLMIS on account statements were fictitious.

Since there were no profits to use either to purchase securities or to pay you any money beyond the amount that was deposited into your BLMIS account, the amount of money you received in excess of the deposits in your account ($606,000.00) was taken from other customers and given to you. Accordingly, because you have withdrawn more than was deposited into your account, you do not have a positive "net equity" in your account and you are not entitled to an allowed claim in the BLMIS liquidation proceeding. Therefore, your claim is **DENIED** in its entirety.

Should a final and unappealable court order determine that the Trustee is incorrect in his interpretation of "net equity" and its corresponding application to the determination of customer claims, the Trustee will be bound by that order and will apply it retroactively to all previously determined customer claims in accordance with the Court's order. Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by you in having your customer claim re-determined in accordance with any such Court order.

Nothing in this Notice of Trustee's Determination of Claim shall be construed as a waiver of any rights or claims held by the Trustee against you.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge Burton R. Lifland, you **MUST** file your written opposition, setting forth the grounds for your disagreement, referencing Bankruptcy Case No. 08-1789 (BRL) and attaching copies of any documents in support of your position, with the United States Bankruptcy Court **and** the Trustee within **THIRTY DAYS** after October 19, 2009, the date on which the Trustee mailed this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must mail your opposition, if any, in accordance with the above procedure, to each of the following addresses:

Clerk of the United States Bankruptcy Court for
the Southern District of New York
One Bowling Green
New York, New York 10004

and

Irving H. Picard, Trustee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111

Irving H. Picard

Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC

cc: Steven Schlesinger, Esq.
Jason Schlesinger
REDACTED
Garden City, NY 11530

| - Table 1 - | | |
|---|---|---|
| **DEPOSITS** | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| 12/24/1992 | CHECK | $150,000.00 |
| 2/1/1994 | CHECK | $174,000.00 |
| 9/1/1994 | CHECK | $100,000.00 |
| 11/23/1994 | CHECK | $27,000.00 |
| 2/9/1996 | CHECK | $50,000.00 |
| **Total Deposits:** | | $501,000.00 |
| | | |
| **WITHDRAWALS** | | |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| 10/2/1995 | CHECK | ($50,000.00) |
| 7/12/1996 | CHECK | ($18,000.00) |
| 7/23/1997 | CHECK | ($21,000.00) |
| 7/22/1998 | CHECK | ($47,000.00) |
| 6/9/1999 | CHECK | ($31,000.00) |
| 11/29/2002 | CHECK | ($90,000.00) |
| 12/23/2003 | CHECK | ($55,000.00) |
| 8/23/2004 | CHECK | ($109,000.00) |
| 8/24/2004 | CHECK | ($109,000.00) |
| 8/31/2004 | CANCEL CHECK | $109,000.00 |
| 1/7/2005 | CHECK | ($110,000.00) |
| 1/10/2006 | CHECK | ($126,500.00) |
| 2/1/2007 | CHECK | ($100,000.00) |
| 2/2/2007 | CHECK | ($100,000.00) |
| 2/6/2007 | STOP PAYMENT | $100,000.00 |
| 2/8/2007 | CHECK | ($50,000.00) |
| 7/24/2007 | CHECK | ($38,500.00) |
| 10/29/2007 | CHECK | ($16,000.00) |
| 1/31/2008 | CHECK | ($35,000.00) |
| 4/30/2008 | CHECK | ($75,000.00) |
| 5/19/2008 | CHECK | ($90,000.00) |
| 10/28/2008 | CHECK | ($45,000.00) |
| **Total Withdrawals:** | | ($1,107,000.00) |
| | | |
| **Total deposits less withdrawals:** | | ($606,000.00) |